UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROBERT BOWEN,

|  |  |
|---|---|
| Plaintiff, | **REPORT &** |
|  | **RECOMMENDATION** |
| -against- | CV 15-6829 (JMA) (GRB) |

BALDWIN UNION FREE SCHOOL DISTRICT
and THE BOARD OF EDUCATION OF THE
BALDWIN UNION FREE SCHOOL DISTRICT
                              Defendants.
-------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

Plaintiff Robert Bowen ("Plaintiff" or "Bowen") commenced this action against Baldwin

Union Free School District (the "District") and the Board of Education of the Baldwin Union Free

School District (the "Board") (collectively "Defendants") alleging violation of several federal and

state laws arising out of Bowen's employment with, and termination from the District.

Specifically, plaintiff alleges defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et*

*seq.* (the "FLSA"); the Fourteenth Amendment of the U.S. Constitution; 42 U.S.C. § 1983; New

York Labor Law ("NYLL") §§ 215, 663 and New York Code of Rules and Regulations § 142-2.2;

and New York Civil Service Law § 80 ("CSL § 80").  Presently before the undersigned on referral

from the Honorable Joan M. Azrack is defendants' motion to dismiss the complaint in its entirety

pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the reasons set forth below, it

is respectfully recommended that defendants' motion be granted in part and denied in part.

## BACKGROUND

### I.  Facts

The following factual assertions are taken from the amended complaint, and materials

attached thereto.  These assertions are not findings of fact by the court but rather are assumed true

for purposes of this motion only.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Bowen commenced employment with the District as a Network Specialist on or around February 4, 2002.  *See* DE 8, Am. Compl. ¶¶ 8-9.  Beginning in April 2004—and continuing until his position was abolished on or around July 1, 2015—plaintiff was employed as an Information Technology Manager.  *Id.*  The Information Technology Manager was a "competitive class position" as contemplated by Article 5, Section 6 of the New York State Constitution.  *Id.* ¶ 56.

On September 9, 2014, plaintiff met with Superintendent of Schools Dr. Cami to discuss his subordinates' performance.  *Id.* ¶ 10.  At this meeting, plaintiff, *inter alia*, "expressed concerns that . . . [one of his subordinates] did not always make her best efforts."  *Id.* ¶¶ 10-14; Compl. Ex. A.  According to Bowen, his comment prompted the following exchange:

> Dr. Camhi: "is [the subordinate] the black one?"
> Bowen: "she is the employee who handles Meadow, Lenox and the website."
> Dr. Camhi: "she must be the one who is a resident of Baldwin . . . . [W]e will have to be creative in finding a way to get rid of her. . . . They like to sue."

Compl. ¶¶ 14-16.  Plaintiff, uneasy with the exchange, again met with Dr. Cami on September 12, 2014.  *Id.* ¶¶ 17-18.  He informed her that "he felt the comments . . . were inappropriate" and that he "would not participate in coming up with creative ways to terminate [the subordinate] from her employment because she was black."  *Id.* ¶ 19.

Bowen alleges that Dr. Cami's attitude towards him changed following these meetings.  *Id.* ¶ 21.  For example, on September 16, 2014, during a meeting with Bowen and Dr. Senuik, the Assistant Superintendent for Instruction, Dr. Cami "aggressively interrogated" plaintiff regarding personnel decisions and questioned the wisdom of technological changes he implemented within the District.  *Id.* ¶¶ 22-26.  In fact, plaintiff claims that Dr. Cami ridiculed plaintiff for his youth, inquired whether he has Attention Deficit Disorder, and threatened to "slap" him.  *Id.* ¶¶ 24-26.

2

After Dr. Senuik left the meeting, Dr. Cami suggested that Bowen "'wasn't going to make it.'" *Id.* ¶ 27.

Plaintiff alerted Dr. Senuik as to what had transpired but, despite Dr. Senuik's reassurances to the contrary, Dr. Cami's malevolent behavior persisted. *Id.* ¶ 28. At varying times throughout the school year Dr. Cami reprimanded plaintiff for leaving early to care for his infant; suggested that he should consider resigning in response to his complaint that he had worked 20 straight days; and repeatedly stated to colleagues that she was going to institute Section 75 charges against him. *Id.* ¶¶ 29-31.[1] Though the timing is unclear, Dr. Cami also requested that "BOCES" perform a discovery audit of plaintiff's department a short time after such an audit had been completed without issue. *Id.* ¶ 32. Bowen claims that Dr. Cami did not divulge the results of the audit, though he appears to allege that a meeting was held subsequent to the audit and, at that meeting, Dr. Cami reiterated her belief that Bowen should resign. *Id.* ¶¶ 33-34.

Bowen attempted to address with Dr. Cami the increasing hostility he was experiencing. *Id.* ¶ 37. In response, however, Dr. Cami prohibited the technology department, including Bowen, from performing any overtime work regardless of the department's needs. *Id.* Despite such prohibition, Dr. Cami expected plaintiff to work on weekends without compensation, and threatened reprisal if he refused. *Id.* ¶¶ 37, 50. Dr. Cami similarly required plaintiff to respond to emails outside of working hours. *Id.* ¶ 40. In total, plaintiff alleges he performed "266.50 hours of Overtime [sic] and was not compensated for the overtime worked." *Id.* ¶ 68.[2]

---

[1] The complaint continues to describe several incidents in which Dr. Cami acted hostile towards plaintiff, including questioning the technology department's integrity; using plaintiff as a "scapegoat"; and refusing to purchase equipment necessary to complete projects. Compl. ¶¶ 38-39, 44. As a result, and in fear of false disciplinary charges being instituted against him, Bowen began recording his conversations with Drs. Cami and Senuik. *Id.* ¶ 45.

[2] Plaintiff incorporates into paragraph 69 of the complaint a chart which purports to identify the number of hours of

On several occasions, plaintiff voiced his concerns about Dr. Cami to Dr. Senuik.  *Id.* ¶¶ 47-48.  In fact, "approximately a month before [his] position was unlawfully abolished," Bowen complained to Dr. Senuik that he had performed overtime work without compensation.  *Id.* ¶ 48.  According to plaintiff, he explained to Dr. Senuik that "he believed it was a violation of law not to have been paid for the emergency overtime . . . and he would file a complaint with the Department of Labor."  *Id.*  After confirming receipt of his "overtime slips," Dr. Senuik assured plaintiff she would assist him in receiving compensation for the overtime performed.  *Id.* at ¶¶ 71-72.  Plaintiff also informed the District that he was not compensated for mandatory overtime work.  *Id.* at ¶ 70.

On July 1, 2015, the Board, on Dr. Cami's recommendation, and without notice to plaintiff, voted to abolish plaintiff's position.  *Id.* at ¶¶ 51-52, 66.  Bowen avers upon information and belief that the position was not abolished "due to economic reasons . . . [or] an abolition of functions."  *Id.* at ¶ 54.  A subsequent Freedom of Information Law request revealed that the Board approved the "probationary appointment of Darren Faccilonga as Director of Technology & Technology Community Partnerships" on the same date plaintiff's position was abolished.  *Id.* at ¶¶ 57-59; Am. Compl. Ex. A.  Attached to the complaint as Exhibit B is a job description for the Director of Technology & Technology Community Partnerships, which sets forth duties plaintiff claims to have performed in his role with the District.  *Id.* at ¶ 61; Am. Compl. Ex. B.

## II.  Procedural History

Plaintiff commenced this lawsuit by the filing of a petition in the Supreme Court of the State of New York, Nassau County, on November 2, 2015.  Docket Entry ("DE") 1-2.  On

---

overtime work plaintiff performed on specific dates throughout 2014/2015 school year.  Notably absent from the chart, however, is the number of non-overtime hours plaintiff worked during any date or week.

December 1, 2015, defendants removed the action to this court.  DE 1, 2.  Defendants then filed a letter motion for a pre-motion conference in accordance with Judge Azrack's Individual Rules. DE 6.  Plaintiff responded to defendants' letter motion on January 12, 2016.  DE 7.  In his response, plaintiff indicated that he believed any deficiency in his complaint could be cured through the filing of an amended complaint.  *Id.*  Accordingly, Judge Azrack ordered plaintiff to file an amended complaint by May 3, 2016.  *See* Order dated Apr. 12, 2016.  Plaintiff filed an amended complaint on that date, alleging causes of action for failure to provide earned overtime compensation under the FLSA and NYLL; unlawful retaliation under the FLSA and NYLL; failure to pay earned compensation under NYLL; violation of the 14th Amendment of the U.S. Constitution and 42 U.S.C. § 1983; and violation of New York Civil Service Law § 80.  DE 8.

Defendants filed a second letter motion for a pre-motion conference to dismiss on May 31, 2016.  DE 10.  Plaintiff responded to defendants' letter motion and, on June 28, 2016, Judge Azrack granted that motion.  DE 11; Electronic Order dated June 28, 2016.  On July 6, 2016, Judge Azrack held the pre-motion conference.  *See* Minute Entry dated July 6, 2016.

On July 21, 2016, during a previously scheduled settlement conference, Judge Azrack referred the case to mediation, which was ordered to take place by September 23, 2016.  *See* Minute Entry dated July 21, 2016.  On November 1, 2016, the report of mediation indicated that mediation had not resulted in settlement.  *See* Report of Mediation dated Nov. 1, 2016.

Defendants, in accordance with Judge Azrack's Individual Rules, filed the fully-briefed motion to dismiss on January 6, 2017.  *See* Minute Entry dated Nov. 9, 2016; DE 18 – 24.  On May 10, 2017, Judge Azrack referred defendants' motion to the undersigned for report and recommendation.  *See* Order Referring Motion dated May 10, 2017.

## DISCUSSION

### I.   Standard of Review

Rule 12(b)(6) authorizes a party to move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt LLC*, 595 F.3d 86, 91 (2d Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

In adjudicating a motion to dismiss, "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).

### II.  Failure to Provide Overtime Compensation

Plaintiff alleges defendants violated the FLSA, 29 U.S.C. § 207(a)(1), and NYLL § 663, by failing to provide him earned compensable overtime as mandated by each statute. Defendants urge dismissal of these claims because though plaintiff alleges he worked compensable overtime

throughout his employment, he does not allege that he performed the requisite 40 hours of work during any workweek.  Defs.' Mem. of L. at 6-8.  The undersigned agrees and therefore respectfully recommends that the district court dismiss these claims.

### A.  FLSA

§ 207(a)(1) of the FLSA prohibits an employer from "employ[ing] any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in e xcess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  "[T]o state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek, as well as some uncompensated times in excess of the 40 hours."  *Lundy*, 711 F.3d at 114.  Thus, a plaintiff must allege "that [he] actually performed work for 40 hours in a week, *and then* work of some amount over 40 hours for which they were not compensated."  *Ramos v. City of New York*, No. 13 Civ. 9225(KBF), 2014 WL 2111687, at *3 (S.D.N.Y. May 9, 2014) (emphasis added); *see Leon v. Port Washington Union Free Sch. Dist.*, 49 F. Supp. 3d 353, 357-58 (E.D.N.Y. 2014) (finding plaintiff plausibly alleged FLSA overtime claim as she "allege[d] that she regularly worked forty hours per week, and provided sufficient estimates of how much additional time she worked each week").  Assessing the plausibility of an FLSA overtime claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Lundy*, 711 F.3d at 114 (quoting *Iqbal*, 556 U.S. at 679); *see Yu v. Knighted LLC*, No. 15-CV-9340 (KMK), 2017 WL 666118, at *8 (S.D.N.Y. Feb. 16, 2017) (quoting *Lundy*, 711 F.3d at 114); *Ramos*, 2014 WL 2111687, at *3.

In a trio of 2013 cases, the Second Circuit expounded the pleading requirement for these claims.  First, in *Lundy*, the Second Circuit affirmed the district court's dismissal of plaintiffs'

overtime claims "because [p]laintiffs [did] not allege[] a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy*, 711 F.3d at 114.  Two of the three plaintiffs alleged that they "typically" or "occasionally" performed duties beyond their scheduled shifts, but failed to identify a week in which such resulted in either performing more than 40 hours of work without overtime compensation.[3]  *Id.* at 114-15 ("[Plaintiff] 'occasionally' worked an additional . . . or slightly longer shift, but . . . [plaintiff] does not say that she was denied overtime pay in any such particular week." (internal citation omitted)).  Rather, in tallying the total alleged uncompensated work, the court found that, at most, plaintiffs worked 39.5 hours in a week, just short of the statutory minimum.  *Id.*  Thus, the claims "failed because of arithmetic."  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) (detailing the court's decision in *Lundy*).

Similarly, the court in *Nakahata v. New York-Presbyterian Healthcare Sys.* held that plaintiffs' overtime claims failed because absent from the complaint was any allegation that plaintiffs "were scheduled to work forty hours in a given week."  723 F.3d 192, 201 (2d Cir. 2013).  Though plaintiffs alleged general performance of overtime work, they failed to satisfy the initial step.  *Id.* at 200-01.  Finally, in *Dejesus*, the court disposed of plaintiff's overtime claim as the complaint "was devoid of any numbers to consider beyond those plucked from the statute" and provided "no more than [a] rephrasing [of] the FLSA's formulation specifically set forth in Section 207(a)(1)."  726 F.3d at 89.

Since the Second Circuit's triumvirate of FLSA overtime decisions, district courts have grappled with the precision and detail required of a complaint alleging an overtime compensation violation.  *See Leon*, 49 F. Supp. 3d at 356-57 (collecting cases).  For example, one district court

---

[3] The third plaintiff conceded that he had never worked over 40 hours in one week.  *Lundy*, 711 F.3d at 115.

found dismissal appropriate where plaintiffs failed to specifically allege they were scheduled to or actually did work at least 40 hours a week. *Ramos*, 2014 WL 2111687, at *4-5. The plaintiffs had argued such allegation was implicit in their claim that defendants, *inter alia*, "failed to pay plaintiffs 'any night shift differential' in their overtime wages." *Id.* at *4 (quoting plaintiff's First Amended Complaint). Thus, according to plaintiffs, the complaint adequately alleged 40 or more hours of work in a given week. *Id.* The court disagreed, noting that the "Second Circuit's decisions in *Lundy*, *Nakahata* and *Dejesus* do not . . . permit such pleading by implication." *Id.* at *5.

The same is true here. The amended complaint details several instances in which plaintiff claims to have worked in excess of his regular duties. *See, e.g.*, Amended Compl., DE 8 at ¶ 29 (alleging plaintiff had worked "20 days straight"); *id.* at ¶ 30 ("[Plaintiff] would often work remotely from home until midnight" despite his shift having ended at 4:00 p.m). In fact, it provides the total number of alleged overtime hours and a chart (the "Overtime Chart") with the dates and hours the overtime was performed. *Id.* at ¶¶ 68-69. Yet, plaintiff fails to aver the total hours typically worked in a week, or his scheduled start time such that the court can calculate those hours. Wholly absent from the amended complaint is any allegation that plaintiff "actually performed work for 40 hours in a week." *Ramos*, 2014 WL 2111687, at *3.

Plaintiff does not deny that the amended complaint lacks an explicit allegation. Rather, he asks this Court to infer that he worked at least 40 hours a week given Dr. Senuik's acknowledgment of receipt of his overtime slips. DE 22, Pl.'s Mem. of Law at 4-5. As the court in *Ramos* held, however, such "pleading by implication" is insufficient to plausibly state an overtime claim. Plaintiff further attempts to save his claim by directing the court to the Overtime Chart. *See* Pl.'s Mem. of Law at 4-5; DE 8, Compl. ¶ 69. This conclusory chart fails to specify

9

the number of regular hours worked in any given period.  The court in *Litras v. PVM Int'l Corp.*, for example, found plaintiff had plausibly alleged an overtime claim because she, *inter alia*, included a chart which was "replete with specific dates and an estimation of the number of hours that she worked on each specific date (along with the start and end time of her work for each date listed)" as well as "the number of *overtime hours* she worked in each week."  No. 11-cv-5695, 2013 WL 4118482, at *7 (E.D.N.Y. Aug. 15, 2013) (emphasis in original).  Plaintiff's chart here lacks similar specificity.

Defendants correctly state that, despite the detail with which plaintiff describes his overtime work, these allegations "do not demonstrate that he allegedly worked this overtime during weeks in which he had already worked forty hours."  DE 20, Defs.' Mem. of Law at 8.  Accordingly, the undersigned respectfully recommends that the district court dismiss plaintiff's FLSA overtime claim.  Because, however, plaintiff may cure this deficiency by amending the complaint, the undersigned recommends plaintiff be granted leave to amend in order to address the concerns raised herein.

### B.  New York Labor Law

§ 142-2.2 of the New York Code of Rules and Regulations adopts the overtime requirements established by the FLSA.  N.Y. Comp. Codes R. 7 Regs. tit. 12, § 142-2.2 ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in . . . the Fair Labor Standards Act of 1938 . . . ."); *see Nakahata*, 723 F.3d at 200; *Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 WL 1251102, at *4 (E.D.N.Y. Apr. 5, 2017) ("In fact, the NYLL mirrors the FLSA in compensation provisions regarding overtime wages." (internal quotations marks and citations omitted)).  Given the statutes' congruity, the Second Circuit has held that the plausibility standard

required of FLSA overtime claims "appl[ies] equally to . . . NYLL state law claims." *Dejesus*,

726 F.3d at 89 n.5; *see Perkins v. 199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278,

289-90 (S.D.N.Y. 2014) (citing *Dejesus*, 726 F.3d at 89 n.5) (dismissing plaintiff's FLSA and

NYLL overtime claims under the *Lundy* plausibility standard).  Accordingly, for the reasons

stated in Section II.A above, the undersigned respectfully recommends that plaintiff's NYLL

overtime claim be dismissed without prejudice.

### III.  Retaliation

Plaintiff alleges defendants violated FLSA, 29 U.S.C. § 215(a)(3) and NYLL § 215 by

terminating him in retaliation for his complaint that he did not receive earned overtime

compensation.  Defendants principally argue that plaintiff has failed to plead a causal connection

between his complaint regarding overtime compensation and his termination.  The undersigned

agrees and respectfully recommends the claims be dismissed.

### A.  FLSA

The FLSA makes it "unlawful for any person . . . to discharge or in any other manner

discriminate against any employee because such employee has filed any complaint . . . under [the

FLSA]."  29 U.S.C. § 215(a)(3).  A claim brought pursuant to this provision ultimately must

satisfy the burden-shifting, three-step framework established by *McDonnell-Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973).  *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing

*Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872, 876 (2d Cir. 1988)); *see Dunn v. Sederakis*, 143

F. Supp. 3d 102, 109 (S.D.N.Y. 2015).  Under this framework, plaintiff must first establish a

*prima facie* case, to wit: "(1) participation in a protected activity known to the defendant; (2) an

employment action disadvantaging the plaintiff; and (3) a causal connection between the

protected activity and the adverse employment action."  *Salazar v. Bowne Realty Assocs., L.L.C.*,

796 F. Supp. 2d 378, 384 (E.D.N.Y. 2011) (citing *Mullins*, 626 F.3d at 47); *see Wang v. Palmisano*, 157 F. Supp. 3d 306, 326 (S.D.N.Y. 2016).

As to the causation element, a plaintiff may satisfy this burden through, *inter alia*, "evidence of retaliatory animus directed against a plaintiff by the defendant or by showing that the protected activity was closely followed in time by the adverse action." *Mullins*, 626 F.3d at 53 (internal quotation marks and citations omitted); *see Herling v. N.Y.C. Dep't of Educ.*, No. 13-cv-5287, 2014 WL 1621966, at *10 (E.D.N.Y. Apr. 23, 2014); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 457 (E.D.N.Y. 2013) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014).  While there is no "bright line" as to the temporal relationship between an adverse action and the protected activity, "the cases that accept mere temporal proximity as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Wang*, 157 F. Supp. 3d at 327 (internal quotation marks omitted) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)); *see Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (finding a gap of sixteen months too remote to support a causal connection); *Salazar*, 796 F. Supp. 2d at 384-85 (finding plaintiff plausibly plead FLSA retaliation claim where the complaint alleged, *inter alia*, an 8-month gap between plaintiff's protected activity and termination).  Even in those cases where the temporal proximity is sufficiently close, however, there can be no inference of causation where the defendant's adverse actions toward plaintiff "began well before" defendant's knowledge of the protected activity.  *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001); *see Baez v. New York*, 629 F. App'x 116, 119 (2d Cir. 2015); *Wang*, 157 F. Supp. 3d at 327-28; *Dabney*, 958 F. Supp. 2d at 456.  Courts within this Circuit have also held that no causal

connection exists where the decision-maker was indisputably unaware of the plaintiff's protected activity.  *See Ehrbar v. Forest Hills Hosp.*, 131 F. Supp. 3d 5, 34-35 (E.D.N.Y. 2015); *Seivright v. Montefiore Med. Ctr., Hosp. of Albert Einstein Coll. of Med.*, No. 11 Civ. 8934(AJN), 2014 WL 896744, at *11 (S.D.N.Y. Mar. 3, 2014) (citing *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)) ("Although the Second Circuit has made clear that it is not necessary that particular individuals know of the protected activities at issue to satisfy the second element of the retaliation analysis, it is equally clear that such lack of knowledge by decision-makers undercuts a claim of causal connection." (internal citations omitted)); *Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *4 (S.D.N.Y. July 22, 2011) (citing *Perry v. N.Y. Dep't of Labor*, No. 08 Civ. 4610(PKC), 2009 WL 2575713, at *6 (S.D.N.Y. Aug. 20, 2009)).

On a motion to dismiss, a complaint alleging unlawful retaliation need not "plead every element of a prima facie case," but rather must meet the plausibility standard established by *Twombly* and *Iqbal*.  *Wang*, 157 F. Supp. 3d at 328-29 (internal quotation marks and citations omitted).  At this stage, "[t]he elements of a *prima facie* case . . . provide an outline of what is necessary to render a plaintiff's . . . claims for relief plausible."  *McManamon v. Shinseki*, No. 11 Civ. 7610(PAE), 2013 WL 3466863, at *4 (S.D.N.Y. July 10, 2013) (internal quotation marks and citations omitted); *see Corbett v. Napolitano*, 897 F. Supp. 2d 96, 111 (E.D.N.Y. 2012) (citing *Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 241 (S.D.N.Y. 2011)) (acknowledging, in Title VII discrimination claim, that "the court should still consider the elements of a *prima facie* case of retaliation in making a determination of whether a plaintiff's complaint gives defendant fair notice of the grounds of his claim"); *see also Qureshi v. Nassau Bd. of Co-op Educ. Servs.*, No. CV 11-2444(SJF)(WDW), 2013 WL 1856500, at *5 (E.D.N.Y. Mar. 13, 2013), *adopted by*, 2013 WL 1856657 (E.D.N.Y. May 1, 2013) (noting, in Title VII discrimination claim, that while

13

a plaintiff need not plead the elements of a prima facie case, she still "must plead facts that would *tend to show*" satisfaction of the prima facie elements) (emphasis added)).  Plaintiff is not required to produce evidence of each *prima facie* element but "must plead facts that indicate an ability to do so."  *McManamon*, 2013 WL 3466863, at *12.

Defendants argue that the amended complaint fails to allege a plausible causal nexus between plaintiff's protected activity (his complaint to Dr. Senuik regarding his failure to receive overtime compensation) and his termination.  *See* Defs.' Mem. of Law at 9 ("Even assuming the plaintiff has sufficiently plead the first two elements of his retaliation claim, he fails to plead sufficient facts demonstrating the requisite causal connection.").  Defendants' argument here is two-fold.  First, defendants assert that plaintiff has failed to allege that the decision-makers involved in his termination were aware of his overtime complaint to Dr. Senuik.  Defendants next argue that plaintiff's allegations concerning Dr. Cami's attempts to discipline and/or terminate him well before his overtime complaint undermines his claim that he was terminated for making such complaint.  Defs.' Mem. of Law at 9-10.  The undersigned addresses each in turn.

The amended complaint clearly alleges that plaintiff complained to Dr. Senuik about overtime work he performed without lawful compensation, and announced his intention to file a complaint with the Department of Labor.  Am. Compl. ¶¶ 50, 64-65.  Plaintiff also pleads that he complained about the same to "the District."  *Id.* at ¶ 70.  However, the amended complaint is without a single allegation that Dr. Cami, who recommended plaintiff's position be abolished, *see* Am. Compl., Ex. A., DE 8, or anyone at the Board of Education knew of these complaints.  Instead, plaintiff proclaims it would be reasonable to infer that Dr. Senuik informed Dr. Cami of the complaint, as Dr. Senuik had stated to plaintiff that she would attempt to resolve the issue.  Pl.'s Mem. of Law at 6.  At most, such an inference nudges plaintiff's claim across the line from

14

possible to plausible.  Plaintiff's claim is somewhat strengthened, however, by the allegation that

he also complained to "the District."  As Superintendent, it is at least arguable that reference to

the District is synonymous with reference to Dr. Cami.  Thus, given the low burden at this stage,

plaintiff, if only barely, sufficiently alleges that at least one of the relevant decision-makers were

aware of his protected activity.  Nevertheless, this discussion is largely academic as plaintiff has

failed to adequately plead that his protected activity caused defendants to unlawfully abolish his

position.

　　　As an initial matter, plaintiff has alleged that the Board abolished his position just one

month after his complaint to Dr. Senuik.  *See* Am. Compl. ¶ 50, 64.  Standing alone, this

timeframe would be sufficient to plead a causal nexus between the protected activity and adverse

action.  *See Dabney*, 958 F. Supp. 2d at 456 (citing *Treglia v. Town of Malius*, 313 F.3d 713, 720-

21 (2d Cir. 2002)) (finding that, "in a vacuum," a five week period between plaintiff's protected

activity and termination could satisfy the causation element).  The overwhelming majority of the

amended complaint, however, details harassing conduct Dr. Cami directed towards plaintiff

beginning in September 2014—approximately eight months before plaintiff complained to Dr.

Senuik.  In fact, plaintiff himself contends that:

> Since expressing his concerns to Superintendent Cami [on September 12, 2014
> about racially-tinged comments Dr. Cami made while speaking with plaintiff],
> Bowen has been berated, yelled at, criticized, scrutinized subject to a hostile work
> environment on a daily basis and ultimately replaced by an employee who performs
> substantially the same duties as [plaintiff].

Am. Compl. at ¶ 21.  The amended complaint also details many instances throughout the school

year in which Dr. Cami stated that she was attempting to find justifications for disciplinary action

against Bowen.  *See, e.g.*, Am. Compl. at ¶¶ 24-26, 30-34, 39-41.  Plaintiff attempts to save his

claim by conclusorily arguing that the retaliation was the result of both his refusal to aide Dr.

Cami in terminating an African-American employee and his complaint about overtime compensation.  There is no doubt, however, that the adverse employment actions commenced long before plaintiff complained about overtime compensation.  Because temporal proximity is the sole basis for plaintiff's retaliation claim, *see* Pl.'s Mem. of Law at 7-8, and here "gradual adverse job actions began well before plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."[4]  *Slattery*, 248 F.3d at 95; *see Dabney*, 958 F. Supp. 2d at 456 ("Where . . . the termination was ultimately the product of an extensive period of progressive discipline . . . , a claim for retaliation cannot be maintained." (internal quotation marks omitted)).

Therefore, the undersigned respectfully recommends that plaintiff's FLSA retaliation claim be dismissed with prejudice.

### B.  New York Labor Law

NYLL § 215 makes it unlawful for any employer to "discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]."  N.Y. Lab. L. § 215(1)(a).  Much like overtime claims brought under the respective statutes, "[t]he standards for stating a claim for retaliation under the FLSA and [NYLL] significantly overlap."  *Salazar*, 796 F. Supp. 2d at 384, 386 (citing *Mullins*, 626 F.3d 47; *Higueros v. New York State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 343, 347 (E.D.N.Y. 2007)); *see Henry v. Nannys for Grannys Inc.*, 86 F. Supp. 3d 155, 159-60 (E.D.N.Y. 2015) (noting that the same standard governs FLSA and NYLL retaliation claims); *Esmilla*, 936 F. Supp. 2d at 239 n.7 (same); *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 472 (S.D.N.Y. 2013)

---

[4] Of course, Dr. Cami's motivation for the ongoing harassment of plaintiff appears far from chaste.  However, plaintiff's claim here is for FLSA retaliation, which is definitively foreclosed by Dr. Cami's earlier conduct.

(same).  Thus, for the reasons discussed in Section III.A above, the undersigned respectfully recommends that plaintiff's NYLL retaliation claim be dismissed with prejudice.

## IV.   Procedural Due Process Claim

Plaintiff, through the Fourteenth Amendment and 42 U.S.C. § 1983 ("§ 1983"), alleges defendants denied him his procedural due process rights prior to his termination.  Defendants contend this claim is foreclosed by plaintiff's failure to request a hearing prior to his termination.  For the reasons set forth below, the undersigned believes that plaintiff has sufficiently alleged a violation of his procedural due process rights.  It is therefore respectfully recommended that defendants' motion to dismiss plaintiff's claim for procedural due process under 42 U.S.C. § 1983 be denied.  The undersigned further recommends, *sua sponte*, that the district court dismiss plaintiff's claim for relief directly under the Fourteenth Amendment.

### A.  Defining Plaintiff's Causes of Action

As an initial matter, and though the parties fail to identify and address this issue, the undersigned must address the seemingly duplicative claims set forth in Counts V and VI of the amended complaint.  Count V, captioned "VIOLATION OF U.S. CONSTITUTION 14TH AMENDMENT," declares that the District violated plaintiff's due process "[b]y terminating him without a hearing and in bad faith."  Am. Compl. ¶¶ 101-04.  Liability is premised solely on the Fourteenth Amendment.  Count VI, captioned "VIOLATION OF 42 U.S.C. § 1983," alleges that, "[a]cting under color of state law . . . Defendants . . . depriv[ed] [plaintiff] of due process prior to termination."

§ 1983 provides:

Every person who, under color any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to

17

the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "The Second Circuit has clearly held that when § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."  *Levine v. Morgenthau*, No. 95 Civ. 8529 (PKL), 1996 WL 396110, at *2-3 (S.D.N.Y. July 16, 1996) (quoting *Pauk v. Bd. of Trustees of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981)) (internal quotation marks omitted); *see Fenner v. City of New York*, 392 F. App'x 892, 893-94 (2d Cir. 2010) (citing *Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979)); *Lehman v. Doe*, 66 F. App'x 253, 254-55 (2d Cir. 2003) (affirming district court's dismissal of plaintiff's claim premised on an implied cause of action under Fourteenth Amendment, given the availability of § 1983).  Because § 1983 is available in suits claiming due process violations by school districts and boards of education[5], *see New York v. Utica City Sch. Dist.*, 177 F. Supp. 3d 739, 750-51 (N.D.N.Y. 2016) (quoting *Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist.*, 238 F. Supp. 2d 469, 475 (N.D.N.Y. 2002)) ("For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell*."); *Dodson v. Bd. of Educ. of the Valley*

---

[5] Some courts in this Circuit have concluded that school boards are not proper defendants in a suit for damages under § 1983.  *See D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist.*, 386 F. Supp. 2d 119, 130-31 (E.D.N.Y. 2005); *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 122 (W.D.N.Y. 2002), *aff'd*, 99 F. App'x 350 (2d Cir. 2004), *cert. denied*, 544 U.S. 920 (2005); *Montefusco v. Nassau Cty.*, 39 F. Supp. 2d 231, 238 (E.D.N.Y. 1999); *Mazza v. Hendrick Hudson Cent. Sch. Dist.*, 942 F. Supp. 187, 192 (S.D.N.Y. 1996) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gentile v. Wallen*, 562 F.2d 193, 195 (2d Cir. 1977)); *see also Nichiporuk v. Bd. of Educ. of Palmyra-Macedon Cent. Sch. Dist.*, 415 F. Supp. 2d 242, 242 n.1 (W.D.N.Y. 2006) (noting that plaintiff's suit, to the extent he sought damages, had to be brought against the school district as opposed to the board of education).  However, the overwhelming majority of cases, some of which are cited above, apply § 1983 against school boards in actions for damages.  *See Huff v. West Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 120-21 (D. Conn. 1998) (noting that the cases finding § 1983 does not lie against a school board rely erroneously on *Gentile*, 562 F.2d at 195, which preceded the Supreme Court's holding in *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 690 (1978)); *see generally Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232 (2d Cir. 2006) (holding that local boards of education in New York are not entitled to Eleventh Amendment immunity as an arm of the state and that the court could "hardly conclude that there would be clear injury to the sovereign dignity of the State of New York by allowing local boards of education to be sued in federal court when we have rejected such a conclusion with respect to suits against the state's local school districts").  The undersigned finds the latter cases more persuasive, if not mandatory under *Monell*.

*Stream Union Free Sch. Dist.*, 44 F. Supp. 3d 240, 247-48 (E.D.N.Y. 2014) (allowing plaintiff's constitutional claims to proceed as "school boards are . . . subject to §1983 claims under *Monell*" and defendants had not addressed the sufficiency of plaintiff's allegations concerning an alleged custom or policy so as to hold the school board liable); *Broomer*, 2013 WL 4094924, at *4-5; *Tyreell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 630-31 (E.D.N.Y. 2011) (citing *Valenti v. Massapequa Union Free Sch. Dist.*, No. 09-CV-977, 2010 WL 475203, at *7 (E.D.N.Y. Feb. 5, 2010)); *Nichiporuk v. Bd. of Educ. of Palmyra-Macedon Centr. Sch. Dist.*, 415 F. Supp. 2d 242, 242-43 (W.D.N.Y. 2006); *Chaffer v. Bd. of Educ. of the City School District of Long Beach*, 229 F. Supp. 2d 185, 188-91 (E.D.N.Y. 2002); *Taylor v. Brentwood Union Free Sch. Dist.*, 908 F. Supp. 1165, 1177-78 (E.D.N.Y. 1995) (proceeding to analyze plaintiff's § 1983 claims against the defendant board of education), plaintiff's cause of action based solely on the Fourteenth Amendment cannot proceed.  The undersigned therefore respectfully recommends the district court dismiss with prejudice Count V of the amended complaint.

The undersigned now addresses the merits of the due process claim against the defendants pursuant to § 1983.

## B.  Procedural Due Process Under § 1983

Section 1 of the Fourteenth Amendment provides that "No state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  A plaintiff claiming that a state has procedurally deprived him of due process must "allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." *J.S. v. T'Kach*, 714 F.3d 99, 105 (2d Cir. 2013).  There are thus two requisites for a procedural due process claim: (1) a protected property interest; and (2) a deprivation of that interest without due process of law. *See Henry v. City of New York*, 638 F. App'x 113, 115 (2d Cir. 2016) (quoting

*Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir.

1994)); *Looney v. Black*, 702 F.3d 701, 706-07 (2d Cir. 2012); *Broomer v. Huntington Union

Free Sch. Dist.*, No. 12 CV 574(DRH)(AKT), 12 CV 575(DRH)(AKT), 2013 WL 4094924, at *4

(E.D.N.Y. Aug. 13, 2013) (quoting *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d

643, 656 (E.D.N.Y. 2009)).

As to the first element, "[i]dentifying the relevant property interest is also a two-step

process." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005) (citing *Ciambriello v. Cty. of

Nassau*, 292 F.3d 397, 313 (2d Cir. 2002)).  First, property interests "are created and their

dimensions are defined by existing rules or understandings that stem from an independent source

such as state law." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *see

O'Conner*, 426 F.3d at 196 (quoting *Roth*, 408 U.S. at 577); *Cifarelli v. Vill. of Babylon*, 894 F.

Supp. 614, 619 (E.D.N.Y. 1995).  In this regard, New York law provides that "a person holding a

position by permanent appointment in the competitive class of the classified civil service may not

be removed . . . except for incompetency or misconduct." *Cifarreli*, 894 F. Supp. at 619 (internal

citations and quotation marks omitted) (quoting N.Y. Civ. Serv. Law § 75(1)(a)).  The inquiry

then turns to whether the identified property right "constitutes a property interest for purposes of

the Fourteenth Amendment." *O'Connor*, 426 F.3d at 196; *see Longo v. Suffolk Cty. Police Dep't*,

429 F. Supp. 2d 553, 559 (E.D.N.Y. 2006) ("While state law may define the interest sought to be

protected, federal law determines whether an interest rises to the level of an 'entitlement'

implicating the protections of the Due Process Clause.").  The Second Circuit has repeatedly held

that civil service employment protected by New York Civil Service Law § 75(1) is covered by the

Due Process Clause.  *See Dwyer v. Regan*, 777 F.2d 825 (1985); *Ciambriello*, 292 F.3d at 313-14

(quoting *O'Neill v. City of Auburn*, 23 F.3d 685, 688 (2d Cir 1994)) (noting that employees

covered by § 75 "may not be terminated without notice and hearing"); *see also Cifarelli*, 894 F. Supp. at 619.

Upon plaintiff's showing of a protected property interest, the analysis proceeds to whether the process provided by the state was "constitutionally adequate." *Cifarelli*, 894 F. Supp. at 619 (quoting *Zinerm v. Burch*, 494 U.S. 113, 126 (1990)). As the Supreme Court has stated:

> An essential principle of due process is that a deprivation of . . . property be preceded by notice and an opportunity for hearing appropriate to the nature of the case. . . . This principle requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal citations and quotation marks omitted). When the protected employment is abolished for legitimate purposes, as opposed to terminated for cause, courts within this Circuit, as well as the Second Circuit itself, have held that no pre-termination hearing is required. *See Knox. v. Town of Southeast*, 599 F. App'x 411, 413 (2d Cir. 2015); *Broomer*, 2013 WL 4094924, at *4-5; *Fehlhaber v. Bd. of Educ. of Utica City Sch. Dist.*, No. 6:09-cv-1380, 2012 WL 2571302, at *8 (N.D.N.Y. July 3, 2012) (quoting *Dwyer*, 777 F.2d at 833). However, where it is alleged that the justification for the abolishment was pretextual and a mere sham, plaintiff is entitled to notice and, upon request, a pre-termination hearing. *Dwyer*, 777 F.2d at 833; *see Knox*, 599 F. App'x at 413; *Cifarelli*, 894 F. Supp. at 620-21. Similarly, when a school abolishes a positon and "another position is created [concurrently] . . . , a pre-termination hearing may be required." *Broomer*, 2013 WL 4094924, at *5.

In the instant case, Bowen alleges he was employed in a Civil Service protected position, which defendants do not dispute. Plaintiff contends his due process rights were violated when the defendants abolished his position not for economic reasons, but rather "in bad faith and in an effort to circumvent the Civil Service Law." Am. Compl. ¶ 66. Bowen further claims the Board voted to approve his replacement on the same date it voted to abolish his position. *See* Am

21

Compl. ¶¶ 52-53.  Based on these allegations, it appears clear plaintiff was entitled to notice and the opportunity to request a pre-termination hearing—a notion defendants do not contest on this motion.  *See Knox*, 599 F. App'x at 413; Defs.' Mem. of Law at 11.

Instead, defendants maintain that even if plaintiff has alleged his position was abolished in bad faith, he cannot succeed on this claim because he failed to request a pre-termination hearing. *See* Defs.' Mem. of Law at 11.[6]  A review of the amended complaint confirms defendants' observation.  This conclusion does not end the analysis, however, as a plaintiff is relieved of the duty to request a hearing if he has not been afforded sufficient time to make such request.  *See Knox*, 599 F. App'x at 413; *Cifarelli*, 894 F. Supp. at 621.  Though plaintiff here fails to raise this issue in his opposition, the amended complaint states that defendants "fail[ed] to give [plaintiff] any notice" that his position would be abolished.  Am. Compl. ¶ 66.  Furthermore, Exhibit A of the amended complaint shows the Board voted to abolish plaintiff's position on July 1, 2015, effective July 2, 2015.  It would be unreasonable to require plaintiff, without the benefit of advanced notice of the vote, to request a pre-termination hearing within one day's time.  *See Cifarelli*, 894 F. Supp. at 621 (finding that "a few hours" was an insufficient amount of notice under the Due Process Clause).  Plaintiff has therefore plausibly alleged that defendants failed to provide him with all the process he was due.  Accordingly, the undersigned respectfully recommends defendants' motion to dismiss this cause of action on the challenged grounds be denied.

---

[6] Defendants also argue that the availability of a post-termination Article 78 proceeding is a constitutionally sufficient remedy for plaintiff.  The availability of a post-termination hearing, however, does not itself satisfy the Due Process Clause when plaintiff is entitled to a pre-termination hearing.  *See Dushane*, 6 F. Supp. 3d at 214-16 (finding that Article 78 did not "preclude [plaintiff] from bringing a procedural due process claim" because plaintiff had sufficiently alleged his entitlement to pre-deprivation notice and hearing).

### C. Municipal Liability and the Proper Defendants

In their memorandum of law, defendants argue in a separate analysis that because plaintiff fails to state a claim of procedural due process he also fails to state a claim of municipal liability. *See* Defs.' Mem. of Law at 11-12. As support, defendants direct the court to the case of *Levy v. Alfano*, 47 F. Supp. 2d 488 (1999). Their reliance is misplaced, however, as the *Levy* court dismissed the complaint against the municipality after having already found that the individual municipal officials did not commit a constitutional violation. *Id.* at 498. The court reasoned that since it had already dismissed the complaint against the individual defendants, and "a municipality may not be held liable where there is no underlying constitutional violation by a municipal official," the suit against the municipality had to be dismissed as well. *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992)).

Here, in contrast, plaintiff has not alleged a constitutional violation by any individual municipal official. Rather, plaintiff names the District and Board as the sole defendants. It is curious then that defendants would argue against municipal liability as a separate basis for dismissal. Nevertheless, because defendants' justification for dismissal here is simply that plaintiff has failed to state an underlying constitutional violation, an argument the undersigned has rejected, it is respectfully recommend that the district court deny defendants' motion to dismiss the § 1983 claim.[7]

### V. State Law Claims

Plaintiff has also asserted claims under § 80 of the Civil Service Law and § 663 of the

---

[7] To be clear, defendants do not move to dismiss on the grounds that either or both defendants did not have final policymaking authority or that plaintiff has failed to allege a custom or policy. Defs.' Mem. of Law at 12; *see Dodson*, 44 F. Supp. 3d at 247-48; *McDonald v. Bd. of Educ. of New York*, No. 01 Civ. 1991 NRB, 2003 WL 21782685, at *2-5 (S.D.N.Y. July 31, 2003).

Labor Law.  Defendants present several arguments in support of dismissal of each claim.  Most

notably, defendants contend that plaintiff has failed to comply with the notice of claim pleading

requirements pursuant to New York Education Law § 3813.  While the undersigned agrees, and

therefore recommends dismissal of each claim on this basis, plaintiff may cure this deficiency

through an amended pleading and should therefore be granted leave to amend his complaint.[8]

> § 3813 of New York's Education Law ("§ 3813") provides that:

> No action . . . involving the rights or interests of any district . . . shall be prosecuted
> or maintained against any school district . . . unless it shall appear by and as an
> allegation in the complaint of necessary moving papers that a written verified claim
> upon which such action or special proceeding is founded was presented to the
> governing body of said district or school within three months after the accrual of
> such claim, and that the officer or body having the power to adjust or pay said claim
> has neglected or refused to make an adjustment or payment thereof for thirty days
> after such presentment.

N.Y. Educ. Law § 3813(1) (McKinney 2017); *see Sheil v. Melucci*, 941 N.Y.S.2d 265, 266 (App.

Div. 2012).  This legislation's language closely tracks the pleading provision located in New

York General Municipal Law § 50-i(1)(b), *see* N.Y. Gen. Mun. Law § 50-i(1)(b) (McKinney

2017), and courts interpreting each have strictly adhered to their commandments.  *See Nunez v.

City of New York*, No. 14-cv-4182 (RJS), 2016 WL 1322448, at *10 (S.D.N.Y. Mar. 31, 2016);

*L.K. v. Sewanhaka Cent. High Sch. Dist.*, No. 14 CV 5730 (DRH) (AKT), 2015 WL 12964663, at

*15 (E.D.N.Y. July 16, 2015) (citing *P.J. Panzeca, Inc. v. Bd. of Educ., Union Free Sch. Dist. No.

6*, 272 N.E.2d 488, 508 (N.Y. 1971)); *Perkins v. City of New York*, 810 N.Y.S.2d 218, 220 (App.

Div. 2006); *Stoetzel v. Wappingers Cent. Sch. Dist.*, 561 N.Y.S.2d 71, 27 (N.Y. App. Div. 1990)

(citing *Murray v. LeRoy Cent. Sch. Dist.*, 491 N.E.2d 1100 (N.Y. 1986)) ("A complaint which

---

[8] As referenced, defendants brief additional arguments in support of their motion to dismiss the remaining state law
claims.  *See* Defs.' Mem. of Law at 12-16.  Because dismissal is required under N.Y. Educ. Law § 3813(1), the
undersigned does not reach the merits of these arguments.

fails to allege compliance with § 3813 is fatally defective."); *see also Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp. 2d 193, 196 n.2 (S.D.N.Y. 2006) (citing *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of New York*, 458 N.E.2d 1241 (N.Y. 1983)).

At the same time, courts typically permit a plaintiff to amend the complaint when there is evidence plaintiff timely served a notice of claim on defendant but nonetheless failed to satisfy § 3813's pleading requirements. *See Sheil*, 941 N.Y.S.2d at 266-67; *see also Razzano v. Cty. of Nassau*, 599 F. Supp. 2d 345, 354 (E.D.N.Y. 2009) (allowing plaintiff to amend his complaint so as to comply with General Municipal Law §§ 50-e, 50-i because defendants had timely received plaintiff's notice of claim, and thus plaintiff's pleading error was "technical"); *Trapp-Miley v. City of New York*, No. 09-CV-3933 (KAM), 2012 WL 1068102, at *15-17 (E.D.N.Y. Jan. 17, 2012), *adopted as modified on other grounds by*, 2012 WL 1068084 (E.D.N.Y. Mar. 29, 2012) (same).

Here, defendants accurately state that the amended complaint (and the original complaint) fails to allege compliance with § 3813.  Plaintiff's opposition summarily argues that "[f]ailure to plead service of a notice of claim in the complaint is not detrimental to a plaintiff's case."  Pl.'s Mem. of Law at 10 (citing *Razzano*, 599 F. Supp. 2d at 354; *Trapp-Miley*, 2012 WL 1068102, at *15-17).  Plaintiff overstates the courts' holdings in these cases.  In *Razzano*, it was established that the defendants did receive plaintiff's notice of claim.  Rather than dismissing plaintiff's state law claims with prejudice, the court permitted plaintiff to amend his complaint "to reflect that he filed a timely notice of claim pursuant to Section 50-e and Section 50-i."  599 F. Supp. 2d at 354.  Similarly, the court in *Trapp-Miley* found it appropriate to allow plaintiff to amend his complaint as defendants had conceded the existence of plaintiff's notice of claim.  2012 WL 1068102, at *16-17.

In contrast, it is far from clear that Bowen served on defendants a timely notice of claim. There are two exhibits submitted on this motion which *may* be construed as plaintiff's notice of claim.  *See* DE 19-3 at 1-4; DE 19-3 at 6-15.  Neither of these exhibits, however, have been referenced in the complaint nor attached to it.  In fact, they come to the court's attention only as exhibits to this motion provided by defendants.  *See* DE 19-3 at 1-4; DE 19-3 at 6-15.  Thus, while it appears that plaintiff may have filed a notice of claim, his failure to attach it to the complaint and to plead compliance with § 3813 prevent his remaining state law claims from proceeding at this time.  Nevertheless, because it appears that this deficiency may be cured by amending the amended complaint, the undersigned respectfully recommends that the district court dismiss the remaining claims with leave to replead compliance with § 3813.

## <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully recommends the district court rule as follows:

1. dismiss without prejudice plaintiff's unpaid overtime claim pursuant to FLSA, 29 U.S.C. §207(a)(1);

2. dismiss without prejudice plaintiff's unpaid overtime claim pursuant to NYLL § 663 and New York Code of Rules and Regulations § 142-2.2;

3. dismiss with prejudice plaintiff's retaliation claim pursuant to FLSA, 29 U.S.C. 215(a)(3);

4. dismiss with prejudice plaintiff's retaliation claim pursuant to NYLL § 215;

5. *sua sponte* dismiss with prejudice plaintiff's due process claim under the Fourteenth Amendment;

6. deny defendants' motion to dismiss plaintiff's due process claim under § 1983; and

7.  dismiss without prejudice plaintiff's remaining state law claims.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically filed with the representatives of each party. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Dated: Central Islip, New York
        August 23, 2017

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge